**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| VAN HORN, METZ & CO., INC., | : | CIVIL ACTION NO.: |
| | : | |
| Plaintiff, | : | 3:21-cv-01128 |
| | : | |
| v. | : | |
| | : | |
| CHRISTINE CRISAFULLI, and | : | **Oral Argument Requested** |
| JOHN and JANE DOES 1-10, | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
IMPOSITION OF CONSTRUCTIVE TRUST AND PRELIMINARY INJUNCTION**

---

# TABLE OF CONTENTS

**PAGE**

I.     PRELIMINARY STATEMENT ..................................................................................1

II.    FACTUAL BACKGROUND ....................................................................................2

    A.     Van Horn Metz's Relationship with Anthony Crisafulli .........................................2

    B.     Anthony Crisafulli's Theft of Van Horn Metz's Assets .........................................3

        1.     Unauthorized Payment of Increased Salary and Bonuses...........................4

        2.     Unauthorized Payment of Commissions......................................................4

        3.     Unauthorized ACH Transfers to Personal Chase Credit Card....................5

        4.     Unauthorized Use of Company Credit Card for Personal Expenses ..........5

    C.     Anthony Crisafulli's Hospitalization, Concealment, and Death............................6

    D.     Christine Crisafulli's Actions Following Anthony Crisafulli's Death ...................6

    E.     Assets Purchased with Stolen Money ....................................................................8

III.   ARGUMENT ..............................................................................................................9

    A.     Preliminary Injunction Standard ..........................................................................10

    B.     Van Horn Metz Demonstrates a Reasonable Probability of Success on the
        Merits of its Claims...............................................................................................11

        1.     Constructive Trust/Unjust Enrichment .....................................................12

        2.     Conversion .................................................................................................13

        3.     Aiding and Abetting...................................................................................15

    C.     Van Horn Metz Will Suffer Irreparable Harm if the Injunction is Not
        Granted..................................................................................................................17

    D.     The Balance of Hardships Weighs in Favor of the Entry of a Preliminary
        Injunction .............................................................................................................19

    E.     The Injunctive Relief Requested by Van Horn Metz will Serve, Not
        Adversely Affect, the Public Interest...................................................................20

    F.     This Court Has Discretion to Waive the Rule 65 Bond Requirement ...................21

IV.    CONCLUSION..........................................................................................................22

# TABLE OF AUTHORITIES

Page(s)

CASES

*Acierno v. New Castle County*,
    40 F.3d 645 (3d Cir. 1994) ...................................................................................11

*AT&T v. Winback & Conserve Program*,
    42 F.3d 1421 (3d Cir. 1994) .................................................................................20

*Berger v. Weinstein*,
    No. 07-cv-994, 2008 U.S. Dist. LEXIS 4621, 2008 WL 191172 (E.D. Pa. Jan.
    23, 2008) .............................................................................................................20

*Bimbo Bakeries USA, Inc. v. Botticella*,
    613 F.3d 102 (3d Cir. 2010) .................................................................................11

*Chi. Title Ins. Co. v. Ellis*,
    978 A.2d 281 (App. Div. 2009) .............................................................................14

*D'Ippolito v. Castoro*,
    242 A.2d 617 (N.J. 1968) .....................................................................................13

*Elliott v. Kiesewetter*,
    98 F.3d 47 (3d Cir. 1996) ...............................................................17, 18, 19, 21

*Failla v. City of Passaic*,
    146 F.3d 149 (3d Cir. 1998) ...........................................................................15, 16

*Favia v. Indiana Univ. of Pa.*,
    7 F.3d 332 (3d Cir. 1993) .....................................................................................11

*Flanigan v. Munson*,
    818 A.2d 1275 (N.J. 2003) ...................................................................................12

*Hoxworth v. Blinder, Robinson & Co.*,
    903 F.2d 186 (3d Cir. 1990) .................................................................................17

*Jurista v. Amerinox Processing, Inc.*,
    492 B.R. 707 (D.N.J. 2013) ............................................................................14, 16

*Juul Labs, Inc. v. 4X Pods, Eonsmoke, LLC*,
    2020 U.S. Dist. LEXIS 240938 (D.N.J. Dec. 20, 2020) ....................11, 17, 18, 19

*Marsellis-Warner Corp. v. Rabens*,
    51 F. Supp. 2d 508 (D.N.J. 1999) .........................................................................17

-ii-

*McCormack v. Twp. of Clinton*,
    872 F. Supp. 1320 (D.N.J. 1994) ........................................................................21

*Meisels v. Fox Rothschild LLP*,
    222 A.3d 649 (N.J. 2020) ...................................................................................14

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*,
    331 F.3d 406 (3d Cir. 2003) .........................................................................15, 16

*Namerow v. PediatriCare Associates, LLC*,
    218 A.3d 839 (App. Div. 2018) ...........................................................................16

*Oburn v. Shapp*,
    521 F.2d 142 (3d Cir. 1975) ................................................................................12

*Ramsay v. Nat'l Bd. of Med. Examiners*,
    968 F.3d 251 (3d Cir. 2020) ................................................................................11

*Reilly v. City of Harrisburg*,
    858 F.3d 173 (3d Cir. 2017) ..........................................................................11, 21

*Sandhills Glob., Inc. v. Garafola*,
    Civil Action No. 19-20669 (MAS) (TJB), 2020 U.S. Dist. LEXIS 65553
    (D.N.J. Apr. 10, 2020) ........................................................................................20

*Shepherd v. Hunterdon Developmental Ctr.*,
    336 N.J. Super. 395, 765 A.2d 217 (App. Div.2001), *aff'd in part, rev'd in
    part*, 174 N.J. 1, 803 A.2d 611 (N.J. 2002) ......................................................15

*Smith v. Cavalier Builders, Inc.*,
    No.Civ.A.06-227, 2008 U.S. Dist. LEXIS 23457 (D.N.J. Mar. 25, 2008)
    (Hillman, J.) .........................................................................................................13

*Temple Univ. v. White*,
    941 F.2d 201 (3d Cir. 1991) ................................................................................21

*Thompson v. City of Atl. City*,
    901 A.2d 428 (App. Div. 2006) ...........................................................................13

*Tillery v. Hayman*,
    No. CIV.A.07-2662, 2008 WL 5416392 (D.N.J. Dec. 22, 2008) ........................11

*Wanaque Borough Sewerage Auth. v. West Milford*,
    677 A.2d 747 (N.J. 1996) ....................................................................................12

*Wilmington Sav. Fund Soc'y v. Otieno-Ngoje*,
    No. 2:16-5631 (WJM), 2016 U.S. Dist. LEXIS 159564 (D.N.J. Nov. 17, 2016)........18, 19, 20

**OTHER AUTHORITIES**

Dan B. Dobbs, *Remedies* § 4.3 (1973)......................................................................12, 13

Federal Rule of Civil Procedure 65 .........................................................................9, 21

26458417v.3

## I.     <u>PRELIMINARY STATEMENT</u>

Plaintiff Van Horn, Metz & Co., Inc. ("Van Horn Metz") moves this Court for the imposition of a constructive trust and for the issuance of a preliminary injunction to preserve and prevent the dissipation of over $4.3 million in funds that were stolen from Van Horn Metz by its former Controller Antonino J. Crisafulli, a/k/a Anthony J. Crisafulli ("Anthony Crisafulli"), who is recently deceased.  Van Horn Metz believes these funds or property purchased with these funds are in the possession of his wife and the presumed executor/administrator[1] of his estate, defendant Christine Crisafulli and/or his heirs or other third parties to whom the property may have been transferred, defendants John and Jane Does 1-10.

Over an approximately eight-year period, Anthony Crisafulli systematically stole funds from Van Horn Metz by increasing his pay and bonus beyond the amount approved by the company, paying himself commissions to which he was not entitled, charging personal expenses to his company credit card, and transferring millions in company funds to pay his personal Chase credit card.  In addition to spending the stolen funds on family vacations and gambling, Anthony Crisafulli purchased assets, including a home in Lavallette, New Jersey valued at approximately $1 million; a home in Fenwick Island, Delaware valued at approximately $1 million; a coin collection valued at approximately $2.5 million; a sports memorabilia collection believed to have substantial value; and jewelry, among other things.  Upon Anthony Crisafulli's recent death, title to these and other assets passed to his wife Christine Crisafulli, his wife and/or certain heirs who are referred to herein as John and Jane Does 1-10 (the "Anthony Crisafulli Heirs").  Having purchased these assets with Van Horn Metz's money, Van Horn Metz is entitled to the

---

[1] Based on the most recent information available to Van Horn Metz, an estate has not yet been opened for Anthony Crisafulli.

imposition of a constructive trust and a preliminary injunction to prevent the dissipation and further transfer of these assets to which Van Horn Metz has equitable and legal claims.

## II.  FACTUAL BACKGROUND[2]

### A.  Van Horn Metz's Relationship with Anthony Crisafulli

Van Horn Metz is a specialty raw materials distributor headquartered in Conshohocken, Pennsylvania.  Van Horn Metz is a pioneer and leader in the industry and specializes in partnering and providing services and solutions to clients engaged in the manufacture of lubricants, inks, adhesives, and sealants, among other things.  Van Horn Metz's success and business model is driven, in part, by its technical expertise and its alliances with a global network of quality suppliers and industry partners.

On or about May 20, 1995, Van Horn Metz hired Anthony Crisafulli as its bookkeeper to work out of its headquarters in Pennsylvania.  Anthony Crisafulli's starting salary was $34,000 per year.  Over time, Van Horn Metz reposed increasing trust and confidence in Anthony Crisafulli and expanded his duties and responsibilities to include, among other things, signature authority over the company's bank accounts, authorization to conduct automated clearing house (or ACH) transfers, responsibility for the company's payroll, responsibility for paying vendors and other company expenses, responsibility for the company's 401(k) retirement plan, oversight of the company's accounting department, communication with company's outside accountants, and responsibility for and access to all of the company's financial records and accounting software.

---

[2]  The facts summarized below are those included in the Verified Complaint and the Declarations of Giorge Dalaperas and Cathy Stevens, attached to the Certification of Thomas B. Fiddler as Exhibits A, B, and C, respectively.

26458417v.3

In or around 2005, Van Horn Metz promoted Anthony Crisafulli to Controller.  Van Horn Metz placed its trust and confidence in Anthony Crisafulli, as its Controller, to classify and record company receipts and expenditures on the general ledger in a manner consistent with standard accounting principles to enable others at Van Horn Metz to be able to obtain an accurate picture of the company's finances.  Anthony Crisafulli owed fiduciary obligations to Van Horn Metz and was legally obligated to act in the best interest of the company and not for the interest of himself and others.

### B.   Anthony Crisafulli's Theft of Van Horn Metz's Assets

Unbeknownst to Van Horn Metz, Anthony Crisafulli stole more than $4.3 million from Van Horn Metz over an eight-year period.  Anthony Crisafulli abused the company's trust and confidence and embezzled company funds to finance a lifestyle for himself and his family well beyond what he or they could otherwise afford.

Anthony Crisafulli was able to conceal his embezzlement schemes by maintaining complete control over the company's finances in his capacity as Controller and (1) providing Van Horn Metz's officers and outside accountants with false and misleading profit and loss statements and annual reports that did  not reflect Van Horn Metz's true financial performance; (2) recording the embezzled funds in the general ledger under the inventory adjustment accounts/cost of goods sold columns such that his theft would not be apparent from the company financial statements; (3) limiting or restricting other Van Horn Metz accounting employees' access to the company accounting system; and (4) maintaining abnormal working hours in an effort to minimize the opportunity for other employees to observe his embezzlement.

Anthony Crisafulli's embezzlement scheme began to unravel following his hospitalization in October 2020, when another employee took over his payroll responsibilities, and it was discovered that he had been systematically paying himself unauthorized commissions.

-3-

Van Horn Metz immediately commenced an internal investigation and ultimately retained a forensic accountant, Stephen J. Scherf, to uncover the depths of Anthony Crisafulli's fraudulent scheme.[3]

### 1.    Unauthorized Payment of Increased Salary and Bonuses

From 2015 to 2020, Anthony Crisafulli misappropriated from Van Horn Metz a total of $688,436 in the form of unauthorized salary and bonuses.  Without knowledge, approval or authorization of Van Horn Metz, Anthony Crisafulli incrementally increased his salary above that which he was legitimately entitled and unilaterally awarded himself bonuses without the knowledge, authorization, or approval of Van Horn Metz as follows:

| Year | Misappropriated Salary / Bonuses |
|------|----------------------------------|
| 2015 | $ 117,838.26 |
| 2016 | $ 115,038.52 |
| 2017 | $ 118,635.88 |
| 2018 | $ 96,788.25 |
| 2019 | $ 101,207.70 |
| 2020 | $ 138,926.90 |
| Total | $ 688,435.51 |

### 2.    Unauthorized Payment of Commissions

From 2012 to 2020, Anthony Crisafulli used company funds to unlawfully pay himself $818,298 in unearned commissions.  At no point during his employment at Van Horn Metz was Anthony Crisafulli entitled receive commissions as part of his compensation.  Nevertheless, he paid himself the following unauthorized commissions without the knowledge, approval, or authorization of Van Horn Metz:

| Year | Unauthorized Commission |
|------|-------------------------|
| 2012 | $ 116,000 |
| 2013 | $ 110,500 |
| 2014 | $ 105,000 |

---

[3] The facts summarized below are taken from Stephen J. Scherf's Preliminary Investigation Report attached to the Certification of Thomas B. Fiddler as Exhibit D.

| | |
|---|---|
| 2015 | $ 109,046 |
| 2016 | $ 82,000 |
| 2017 | $ 80,348 |
| 2018 | $ 83,000 |
| 2019 | $ 72,173 |
| 2020 | $ 60,231 |
| | |
| Total | $ 818,298 |

### 3.   Unauthorized ACH Transfers to Personal Chase Credit Card

From 2013 to 2020, Anthony Crisafulli misappropriated a total of $3,333,618 of Van

Horn Metz's money by making unauthorized ACH transfers from Van Horn Metz's PNC Bank

Account to his personal Chase credit card.  The payments that Anthony Crisafulli made to his

personal Chase credit card were without Van Horn Metz's knowledge, approval and

authorization.  Upon information and belief, Anthony Crisafulli transferred funds to his personal

credit card to pay for personal and family assets and expenses, including the purchase of

expensive coins, sports memorabilia, family homes, and vacations.  Anthony Crisafulli made the

following unauthorized ACH transfers to his personal Chase credit card:

| Year | Improper ACH Transfers |
|---|---|
| 2013 | $ 247,418 |
| 2014 | $ 386,625 |
| 2015 | $ 318,590 |
| 2016 | $ 439,500 |
| 2017 | $ 680,044 |
| 2018 | $ 470,041 |
| 2019 | $ 480,500 |
| 2020 | $ 310,900 |
| | |
| Total | $ 3,333,618 |

### 4.   Unauthorized Use of Company Credit Card for Personal Expenses

Additionally, Anthony Crisafulli used his company credit card to pay personal expenses

in violation of Van Horn Metz's company policy and in breach of his fiduciary duties.  Van Horn

Metz has not yet fully quantified the amount of unauthorized personal expenses charged to

26458417v.3

Anthony Crisafulli's company credit card, but those amounts are believed to be in excess of $10,000.

### C.    Anthony Crisafulli's Hospitalization, Concealment, and Death

Following Anthony Crisafulli's hospitalization, Anthony and defendant Christine Crisafulli took further steps to conceal his embezzlement scheme.  Anthony Crisafulli, with the assistance and participation of defendant Christine Crisafulli, called a Van Horn Metz employee from the hospital to implore said employee to take the company payroll records home or otherwise conceal them from Van Horn Metz's President, Barrett Fisher.  Upon information and belief, Anthony and Christine Crisafulli sought to hide the payroll records from Van Horn Metz's President so that Anthony Crisafulli's excessive and illegitimate pay in the form of unauthorized commissions, salary, and bonuses would not be discovered.

Anthony Crisafulli, with the assistance and encouragement of defendant Christine Crisafulli, additionally called Key Financial, the company responsible for coordinating Van Horn Metz's 401(k) investments, in an effort to conceal Anthony Crisafulli's embezzlement scheme. Anthony Crisafulli spoke to a Key Financial employee and asked her to take care of everything related to Van Horn Metz's 401(k) plan (including deductions from payroll), and informed her that she should not "let Barry [Fisher, Van Horn Metz's president], mess anything up."

Anthony Crisafulli died on October 30, 2020.

### D.    Christine Crisafulli's Actions Following Anthony Crisafulli's Death

After Anthony Crisafulli's death, defendant Christine Crisafulli took additional steps to further conceal her husband's breach of fiduciary duties and embezzlement.  On or about November 3, 2020, a Van Horn Metz representative contacted defendant Christine Crisafulli to request the prompt return of company property (including his laptop computer, a bank key fob

for international wires, checks for suppliers, stock loan documents, and other company documents) that had been entrusted to Anthony Crisafulli prior to his death.

Christine Crisafulli initially indicated that she would arrange for the return of the company property.  Later, she informed Van Horn Metz's president that she had last seen the laptop in the hospital and that she had been unable to locate it since.  Christine Crisafulli refused, however, to return the company cell phone which was admittedly in her possession.  On November 22, 2020, Van Horn Metz's president contacted Christine Crisafulli to renew his request for the return of Anthony Crisafulli's cell phone.  Van Horn Metz's president further informed Christine Crisafulli that to the extent any personal information existed on the cell phone, that it would be preserved and returned by Van Horn Metz's IT consultant.

The next day, on or around November 23, 2020, Van Horn Metz's outside IT consultant spoke with Christine Crisafulli at which time he explained that any personal information on the phone would segregated, preserved, and returned to her.  Notwithstanding Van Horn Metz's efforts to recover the company property and preserve all such company information, upon information and belief defendant Christine Crisafulli or someone on her behalf intentionally wiped the phone clean of any and all information and restored the device to factory settings.

Moreover, upon information and belief, Christine Crisafulli has or had the company laptop in her possession at all relevant times while Anthony Crisafulli was in the hospital and immediately following his death, notwithstanding her incredulous claim that she has been unable to locate it.  Upon information and belief, Christine Crisafulli either still has possession of Anthony Crisafulli's laptop or she or someone at her direction, has destroyed or disposed of the company laptop in order to fraudulently conceal evidence of Anthony Crisafulli's theft and breaches of his fiduciary duties to Van Horn Metz.

-7-

Upon information and belief, Christine Crisafulli has dissipated assets which were purchased with Van Horn Metz's stolen funds and has dissipated and fraudulently conveyed jewelry and other assets which were purchased with Van Horn Metz's stolen funds in the weeks since her husband's death.  Additionally, on November 24, 2020, upon information and belief, Christine Crisafulli paid $1,076,372 in cash for a second home located in Delaware using funds that Anthony Crisafulli stole from Van Horn Metz in breach of his fiduciary duties to the company.

### E.    Assets Purchased with Stolen Money

Anthony Crisafulli and/or Christine Crisafulli used the substantial funds that he embezzled from Van Horn Metz to enrich himself and his family and to live a lavish lifestyle that they could not otherwise afford.  Upon information and belief, defendant Christine Crisafulli knew or should have known that her husband, Anthony Crisafulli, had an annual salary of approximately $139,000 in 2020 and that his position as Controller at Van Horn Metz could never have provided their family with enough legitimate income to own the assets and lead the lifestyle being led by their family.  Defendant Christine Crisafulli nevertheless aided and abetted Anthony Crisafulli's breach of fiduciary duties by participating in his efforts to spend the stolen funds on assets for the benefit of their family and to make the tracing and identification of the stolen money more difficult.

For example, on or about April 28, 2016, Anthony Crisafulli and Christine Crisafulli purchased a vacant lot in Lavallette, New Jersey for $995,000 where they custom-built their family home.  Upon information and belief, Anthony Crisafulli and Christine Crisafulli put $450,000 in cash down on the property and then spent an additional hundreds of thousands of dollars building their 3,600 square foot beach-front home located at 35 Bullard Drive in

Lavallette, New Jersey.  By the time of this purchase, Anthony Crisafulli had already stolen at least $1,511,017 from Van Horn Metz.

By way of further example, Anthony Crisafulli used Van Horn Metz's funds to pay for his coin collection valued at more than $2,500,000.  Upon information and belief, Anthony Crisafulli frequented coin shows and regularly purchased expensive coins worth anywhere from $10,000 to $65,000 using Van Horn Metz's money from at least 2015 to 2020.

Upon information and belief, Anthony Crisafulli and defendant Christine Crisafulli additionally used the embezzled funds to purchase lavish vacations, often for the whole family, multiple times per year, including trips to:

- The Beach Club Charleston in South Carolina (August 2020);
- The Ritz-Carlton in Fort Lauderdale, Florida (November 2019);
- Playa del Carmen, Mexico (November 2019);
- a Miami Dolphins' game in Florida (December 2018);
- Venice, Italy for a Mediterranean cruise, while staying in a 3 bedroom garden villa on the Norwegian Star (June 2018);
- London, England (October 2017);
- Havana, Cuba (August 2017);
- The Cayman Islands (May 2017);
- Playa del Carmen, Mexico (January 2017);
- St. Barths/ St. Maarten (November 2016);
- British Virgin Islands (May 2016); and
- Cabo San Lucas, Mexico (January 2016).

## III.  ARGUMENT

Van Horn Metz moves this Court pursuant to Rule 65 of the Federal Rules of Civil Procedure for the imposition of a constructive trust and the issuance of a preliminary injunction with respect to the $4.3 million of its funds stolen by Anthony Crisafulli and the assets purchased by Anthony Crisafulli and/or defendant Christine Crisafulli with the stolen funds.  In support of this motion, Van Horn Metz presents irrefutable evidence that it entrusted Anthony Crisafulli with access to its funds and the obligation to record all financial transactions in an accurate

manner.  In breach of his fiduciary obligations, Anthony Crisafulli embezzled over $4.3 million and used it for the benefit of himself and his family.  Further, Anthony Crisafulli actively concealed his fraud to prevent Van Horn Metz from discovering it.  Only after Anthony Crisafulli died was Van Horn Metz able to discovery his unlawful actions.

Without the stolen funds, neither Anthony Crisafulli nor his wife, defendant Christine Crisafulli, had sufficient income or assets to purchase two homes (each valued at approximately $1 million), a $2.5 million coin collection, valuable sports memorabilia, jewelry, or season tickets to the Miami Dolphins football games or to take multiple expensive family vacations. Anthony Crisafulli's base salary with Van Horn Metz was $139,423.30, and upon information and belief, Christine Crisafulli did not work outside of the home.

If a constructive trust is not imposed and a preliminary injunction not granted, Van Horn Metz will suffer immediate and irreparable harm because there will be no impediment to Christine Crisafulli or other heirs or third parties from further dissipating Van Horn Metz's money and property purchased with that money, thereby rendering Van Horn Metz effectively without a remedy for the substantial harm that it has suffered.  No harm will result to defendants if the requested relief is granted because they do not have legal or equitable right to the money stolen from Van Horn Metz or the property purchased with that stolen money.  Moreover, the public interest lies in allowing victims to recover stolen funds and in not permitted the defendants from dissipating the stolen money or property purchased with the stolen money.

A.     **Preliminary Injunction Standard**

In determining whether to grant a preliminary injunction, a court must consider whether the party seeking the injunction has satisfied four factors: (1) likelihood of success on the merits of its underlying claims; (2) that the party will suffer irreparable harm if the injunction is denied; (3) that granting relief will not result in even greater harm to the nonmoving party; and (4) that

the public interest favors such relief.  *See Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010) (citations omitted).  "A primary purpose of a preliminary injunction is maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle County*, 40 F.3d 645, 647 (3d Cir. 1994); *see also, e.g., Favia v. Indiana Univ. of Pa.*, 7 F.3d 332, 342 (3d Cir. 1993) ("Preliminary injunctions commonly favor the status quo and seek to maintain things in their initial condition so far as possible until after a full hearing permits final relief to be fashioned.").

Here, as set forth below, Van Horn Metz has established all the requirements to grant the requested preliminary injunction.  Accordingly, this Court should grant Van Horn Metz's request for preliminary injunctive relief.

### B.     Van Horn Metz Demonstrates a Reasonable Probability of Success on the Merits of its Claims

In order to establish the first preliminary injunction factor, Van Horn Metz must show "a reasonable chance or probability[] of winning" any one of its claims.  *Ramsay v. Nat'l Bd. of Med. Examiners*, 968 F.3d 251, 256 (3d Cir. 2020) (citation omitted).  *See also Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017) (the moving party must merely make a showing "significantly better than negligible" that it can win on the merits).  "This is not to imply, however, that [Van Horn Metz] must meet its ultimate burden of 'a more-likely-than-not showing of success.'" *Juul Labs, Inc. v. 4X Pods, Eonsmoke, LLC*, 2020 U.S. Dist. LEXIS 240938 (D.N.J. Dec. 20, 2020) (quoting *Reilly*, 858 F.3d at 179 n.3).  Instead, a party is likely to succeed on the merits when there is a reasonable probability of eventual success in the litigation; this element does not require showing that a final decision in the movant's favor is "wholly without doubt; rather, the burden is on the party seeking relief to make a prima facie case showing a reasonable probability that it will prevail on the merits." *Tillery v. Hayman*, No.

CIV.A.07-2662, 2008 WL 5416392, at *2 (D.N.J. Dec. 22, 2008) (quoting *Oburn v. Shapp*, 521

F.2d 142, 148 (3d Cir. 1975)).

### 1.    Constructive Trust/Unjust Enrichment

In Counts I and II of the Verified Complaint, Van Horn Metz asserts claims for an

imposition of a constructive trust and for unjust enrichment against Christine Crisafulli and John

and Jane Does 1-10, asserting that it would be unjustly enriched if permitted to retain funds

stolen from Van Horn Metz or property purchased with funds stolen from Van Horn Metz.

Under New Jersey law, there are two basic elements of unjust enrichment: "(1) that the defendant

has received a benefit from the plaintiff, and (2) that the retention of the benefit by the defendant

is inequitable." *Wanaque Borough Sewerage Auth. v. West Milford*, 677 A.2d 747, 753 (N.J.

1996).

Both elements have been established here.  First, in the Verified Complaint, Van Horn

Metz's alleges that defendant Christine Crisafulli received a benefit the form of more than $4.3

million that was stolen from the company.  Second, defendant Christine Crisafulli's retention of

the benefit is inequitable because neither she nor Anthony Crisafulli has any legitimate right to

those funds or the property purchased with those funds.

A constructive trust on property is appropriate in order to "prevent unjust enrichment and

force a restitution to the plaintiff of something that in equity and good conscience [does] not

belong to the defendant." *Flanigan v. Munson*, 818 A.2d 1275, 1281 (N.J. 2003) (citing Dan B.

Dobbs, *Remedies* § 4.3, at 246 (1973)).  "Stated differently, a constructive trust is the formula

through which the conscience of equity finds expression.  When property has been acquired in

such circumstances that the holder of the legal title may not in good conscience retain the

beneficial interest equity converts him into a trustee." *Id*. (citations and quotation marks

omitted).  Importantly, "[t]he circumstances in which a constructive trust may be imposed are as

-12-

26458417v.3

extensive as required to reach an equitable result." *Thompson v. City of Atl. City*, 901 A.2d 428, 439 (App. Div. 2006).

New Jersey courts employ a two-prong test when determining whether a constructive trust is warranted: (1) a court must find that a party has committed "a wrongful act;" and (2) "the wrongful act must result in the transfer or diversion of property that unjustly enriches the recipient." *Id.* (citing *D'Ippolito v. Castoro*, 242 A.2d 617 (N.J. 1968)).  Notably, the "wrongful act" need not be fraudulent to result in a constructive trust; a mere mistake is sufficient to result in a constructive trust.  *Id.* (citing Dobbs, *supra*, § 4.3, at 243 (observing that "constructive trust may be used as a remedy for innocent misstatements, or even simple mistakes, as well as a remedy for fraud")).

Here, both elements of the two-prong constructive test are satisfied.  The "wrongful act" element is well-established based on the facts pled in Van Horn Metz's Verified Complaint. Anthony Crisafulli and defendant Christine Crisafulli obtained funds from Van Horn Metz through an unlawful procedure by which Anthony Crisafulli misappropriated the company's funds and defendant Christine Crisafulli converted such funds for her own benefit.  Defendant Christine Crisafulli was undoubtedly "unjustly enriched" when she received and retained such stolen funds belonging to Van Horn Metz.  As such, Van Horn Metz had established that equity requires the imposition of a constructive trust.

### 2. Conversion

Van Horn Metz also demonstrates a reasonable likelihood of success on the merits of its claim for conversation against defendants.  In New Jersey, a claim for conversion is based on the notion that "the wrongful exercise of dominion and control over property owned by another [is] inconsistent with the owner's rights." *Smith v. Cavalier Builders, Inc.*, No.Civ.A.06-227, 2008 U.S. Dist. LEXIS 23457, at *21 (D.N.J. Mar. 25, 2008) (Hillman, J.) (internal citations and

-13-

quotation marks omitted).  "Traditionally applied to chattels, conversion applies to money, provided that 'the money ha[s] belonged to the injured party and that it be identifiable.'" *Meisels v. Fox Rothschild LLP*, 222 A.3d 649, 660 (N.J. 2020) (quoting *Chi. Title Ins. Co. v. Ellis*, 978 A.2d 281, 287-88 (App. Div. 2009)).  Although the converted money must be identifiable, "the money need not be the identical bills or coins that belong to the owner."  *Chi. Title Ins. Co.* 978 A.2d at 288.  "As such, a conversion claim under New Jersey law consists of three elements: (1) the defendant wrongfully exercised dominion or control over the property of another; (2) the property was taken without authorization; and (3) the property was taken to the exclusion of the owner's rights to it." *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 753 (D.N.J. 2013).

Consequently, to establish a likelihood of success on the merits of its conversion claim, Van Horn Metz need not prove that defendants were aware that Anthony Crisafulli had obtained the money through a fraudulent scheme.  *See Chi. Title Ins.*, 978 A.2d 281, 287-88 (App. Div. 2009) (noting that a defendant may be liable for conversion even when "he acted in good faith and in ignorance of the rights or title of the owner").   Van Horn Metz need only show that defendants exercised exclusive dominion or control over money that belongs to Van Horn Metz, and that such money is sufficiently identifiable.

The facts set forth in the Verified Complaint establish these requisite elements.  First, Van Horn Metz alleges that Christine Crisafulli and John and Jane Does 1-10 improperly exercised dominion and control over Van Horn Metz's money by possession money stolen from Van Horn Metz and property purchased with money stolen from Van Horn Metz.  *See Chi. Title Ins.*, 978 A.2d at 288 ("Because the funds were obtained through fraud, neither Jamila Davis nor anyone else ever obtained a right to exercise dominion or control over the money. The money continued to belong to Lehman at all times since there was no true loan transaction, just as

-14-

money would continue to belong to its owner where it has been stolen by a thief."). Second, the Verified Complaint details the ways in which its money was taken without authorization. *See* Verified Compl. at. ¶¶ 16-26. Third, the money was taken to the exclusion of Van Horn Metz's right to it. Finally, the money is sufficiently identifiable in that Van Horn Metz has traced at least $4.3 million flowing from its bank account to Anthony Crisafulli's and defendant Christine Crisafulli's joint bank accounts and Anthony Crisafulli's credit cards. This is sufficient under New Jersey law to establish conversion.

Based on these facts, Van Horn Metz has established a likelihood of success on the merits of its conversion claim. Accordingly, preliminary injunctive relief is appropriate and necessary here.

### 3.     Aiding and Abetting

Van Horn Metz has also established a likelihood of success on the merits of its claim that defendant Christine Crisafulli aided and abetted the breach of fiduciary duty that was owed to Van Horn Metz by its Controller, Anthony Crisafulli. "The elements of aiding and abetting are: (1) the commission of a wrongful act; (2) knowledge of the act by the alleged aider-abettor; and (3) the aider-abettor knowingly and substantially participated in the wrongdoing." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 415 (3d Cir. 2003) (applying New Jersey law). To impose aiding and abetting liability in the civil context, therefore, a defendant "must willingly and knowingly associate himself or herself with the unlawful act, and seek to help make the act succeed." *Shepherd v. Hunterdon Developmental Ctr.*, 336 N.J. Super. 395, 425, 765 A.2d 217 (App. Div.2001), *aff'd in part, rev'd in part*, 174 N.J. 1, 803 A.2d 611 (N.J. 2002). However, shared intent is not a prerequisite to such liability under New Jersey law. *See Failla v. City of Passaic*, 146 F.3d 149, 157 (3d Cir. 1998) "A person is liable for harm resulting to a third person from the conduct of another when he 'knows that the other's conduct

-15-

constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself . . . .'"  *Morganroth*, 331 F.3d at 415 n.3 (quoting *Faila*, 146 F.3d at 157-58).

A claim for aiding and abetting also requires proof of the underlying tort; in this case, the breach of fiduciary duty/conversion committed by Anthony Crisafulli.  Under New Jersey law, in order to establish a claim for breach of fiduciary duty, a plaintiff must show that: (1) the defendant had a duty to the plaintiff; (2) the duty was breached; (3) injury to the plaintiff occurred as a result of the breach; and (4) the defendant caused that injury.  *Namerow v. PediatriCare Associates, LLC*, 218 A.3d 839, 846 (App. Div. 2018).  Conversion, on the other hand, requires a showing that "(1) the defendant wrongfully exercised dominion or control over the property of another; (2) the property was taken without authorization; and (3) the property was taken to the exclusion of the owner's rights to it." *Jurista*, 492 B.R. at 753.

Van Horn Metz's Verified Complaint provides numerous allegations of defendant Christine Crisafulli's knowing assistance to Anthony Crisafulli's fraudulent schemes.  Despite knowing that Anthony Crisafulli owed fiduciary responsibilities to Van Horn Metz, defendant Christine Crisafulli provided substantial assistance and encouragement to Anthony Crisafulli by participating in his efforts to dissipate the money stolen from the company by purchasing jointly owned real estate, coins, sports memorabilia, jewelry, plane tickets, hotel rooms, and sports tickets, among other things with the hope of making it difficult, if not impossible for Van Horn Metz to recover the stolen funds from Anthony Crisafulli or Anthony Crisafulli's estate.  Additionally, after Anthony Crisafulli's death, Christine Crisafulli aided and abetted Anthony Crisafulli's unlawful conduct by refusing to return and destroying information on his company iPhone and laptop computer, which could have been helpful in establishing Van Horn Metz's claims.

-16-

### C.       Van Horn Metz Will Suffer Irreparable Harm if the Injunction is Not Granted

Van Horn Metz is likely to suffer irreparable harm unless the Court protects the more-than $4.3 million in assets and funds in defendants' possession from dissipation.  A plaintiff demonstrates irreparable harm and is entitled to preliminary injunctive relief when it is threatened with potential harm that "cannot be redressed by a legal or equitable remedy following trial." *Nat'l Reprographics*, 621 F. Supp. 2d at 229.  The Third Circuit has repeatedly recognized that "the unsatisfiability of a money judgment can constitute irreparable injury" for the purposes of granting a preliminary injunction.  *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 206 (3d Cir. 1990).  *See also Elliott v. Kiesewetter*, 98 F.3d 47, 54 (3d Cir. 1996).  Moreover, "a party seeking an asset freeze [or preliminary injunctive relief] to preserve a money judgment may show irreparable injury by showing that the freeze is necessary to prevent the consumption, dissipation or fraudulent conveyance of the assets that the party pursuing the asset freeze seeks to recover in the underlying litigation." *Elliott*, 98 F.3d at 58.  *See id*. ("The fact that the assets subject to the Freeze Order are primarily money assets does not preclude entry of a freeze order enjoining the use of those assets.").

As such, courts may enter a preliminary injunction to restrain the disposition of assets where, as here, there is evidence that the defendants already have attempted to put assets out of reach or that they have engaged in other financial misconduct.  *See Marsellis-Warner Corp. v. Rabens*, 51 F. Supp. 2d 508, 531 (D.N.J. 1999) ("Defendants who have engaged in 'past financial manipulations' create a 'substantial and real risk … that funds would be unavailable to satisfy a reasonably foreseeable judgment in plaintiffs' favor." (citations omitted)).  For example, in *Juul Labs, Inc. v. 4X Pods, Eonsmoke*, LLC, 2020 U.S. Dist. LEXIS 240938, at *42 (D.N.J. Dec. 22, 2020), this Court recently recognized that the "consumption" of assets may warrant an

-17-

asset freeze where the defendant's principals spent nearly $3 million on a house, renovations, and furniture. In doing so, the Court noted that while some of the purchases, like the property and the furniture, might eventually be recouped by the plaintiff, "liquidating [defendant's] non-cash assets is not a simple task and might or might not result in recovery of the full purchase price." *Id*. at *42, n.16. Similarly, in *Wilmington Sav. Fund Soc'y v. Otieno-Ngoje*, No. 2:16-5631 (WJM), 2016 U.S. Dist. LEXIS 159564, at *6 (D.N.J. Nov. 17, 2016), this Court held that a defendant's down payments on properties supported an asset freeze. There, the Court granted a preliminary injunction upon finding "Plaintiff has clearly shown that Defendant has already dissipated a portion of the funds subject to a potential judgment to make down payments on three separate properties . . . . because there is a high likelihood that dissipation will continue without the issuance of a preliminary injunction." *Id*.

The same holds true here. Van Horn Metz will suffer irreparable harm if this Court does not issue a preliminary injunction because there is evidence suggesting that defendant Christine Crisafulli has attempted to hide or dispose of assets in an effort to avoid a potential judgment and it is very unlikely that she otherwise has sufficient assets to pay Van Horn Metz's money judgment in excess of $4.3 million. *See Elliott*, 98 F.3d at 54 ("A district court is clearly permitted to consider the likelihood that a defendant will be able to pay a judgment in determining whether to enter an asset freeze order."). Together, both of these factors establish irreparable injury. As set forth in the Verified Complaint, defendant Christine Crisafulli recently paid approximately $1,076,372 to purchase a custom-built house in Delaware. Defendant Christine Crisafulli, upon information and belief, has also transferred jewelry and money to her children following the death of her husband. At a minimum, this Court should view defendant Christine Crisafulli's purchase of a second home in Delaware as proof of the irreparable harm

-18-

that Van Horn Metz will suffer is Defendant is not enjoined. *See Wilmington Sav. Fund Soc'y*, 2016 U.S. Dist. LEXIS 159564, at \*6 (holding that defendant's down payments on properties supported an asset freeze).

Absent an injunction, Van Horn Metz's expected judgment in excess of $4.3 million would likely go unsatisfied because, upon information and belief, the only substantial assets owned by Christine Crisafulli are those purchased with money stolen from Van Horn Metz.  Van Horn Metz has accordingly established irreparable harm warranting such preliminary injunctive relief.

> **D.      The Balance of Hardships Weighs in Favor of the Entry of a Preliminary Injunction**

At this time, Van Horn Metz seeks for this Court to impose a constructive trust upon certain identifiable assets believed to be in the possession of Christine Crisafulli and/or other heirs of Anthony Crisafulli and to enjoin the transfer or dissipation of those assets until further order of this Court.  Van Horn Metz does not seek to evict Christine Crisafulli from either of the million dollar homes that she owns or force a liquidation of any assets.  Thus, the relief requested by Van Horn Metz does not impose any hardship on Christine Crisafulli or any of the John or Jane Doe defendants.

The only arguable hardship imposed on Christine Crisafulli and the John and Jane Doe defendants is their inability to spend the funds stolen from Van Horn Metz.  Where, as here, defendants have spent the stolen assets on luxury and personal expenses, this Court has found there is little injury in having to forgo such discretionary spending. *See Juul Labs, Inc.*, 2020 U.S. Dist. LEXIS 240938 at \*45 (citing *Elliott*, 98 F.3d at 59 ("The inability to spend . . . on primarily luxury expenses does not strike us as a hardship.")).

-19-

On the other side of the balance, Van Horn Metz has made a strong showing that (1) it will succeed on its claims for conversion, unjust enrichment, and aiding and abetting fraud/breach of fiduciary duty; (2) that any one of its claims is worth a substantial amount of money, believed to be in excess of $4.3 million, and quite possibly more than defendants' current assets; and (3) its prospective judgment is legitimately at risk given defendant Christine Crisafulli's conduct.  Accordingly, the hardship to defendants from these proposed restrictions is outweighed by the harm Van Horn Metz faces if defendants cannot pay a judgment.

> ### E.   The Injunctive Relief Requested by Van Horn Metz will Serve, Not Adversely Affect, the Public Interest

The public interest is served by imposing a constructive trust on any stolen funds and/or assets purchased with such stolen funds in the possession of defendant Christine Crisafulli and John and Jane Does 1-10.  It is in the public interest to ensure that neither the person who stole money nor those who receive the stolen money or property purchased with it benefit from that unlawful conduct.  *See, e.g., Wilmington Sav. Fund Soc'y*, 2016 U.S. Dist. LEXIS 159564, at *6-7 ("The public interest is served by preserving a potential judgment against a fraudulent conveyance claim.").  *See id*. (citing *Berger v. Weinstein*, No. 07-cv-994, 2008 U.S. Dist. LEXIS 4621, 2008 WL 191172, at *11 (E.D. Pa. Jan. 23, 2008) ("the prevention of unjust enrichment by means of fraud or misappropriation, even that affecting only private entities, is in the general public interest") (internal quotations omitted)).

Moreover, "'[a]s a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff.'" *Sandhills Glob., Inc. v. Garafola,* Civil Action No. 19-20669 (MAS) (TJB), 2020 U.S. Dist. LEXIS 65553, at *38 (D.N.J. Apr. 10, 2020) (quoting *AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994)).  Accordingly, the public

interest favors the preliminary injunctive relief sought by Van Horn Metz because it has demonstrated a likelihood of success on the merits and irreparable injury.

### F.      This Court Has Discretion to Waive the Rule 65 Bond Requirement

Given the circumstances at issue here, Van Horn Metz respectfully requests that this Court waive the bond requirement because Van Horn Metz is likely to succeed on the merits and it has already suffered a loss in excess of $4.3 million.  Further, the Court has broad discretion to fashion injunctive relief which would allow defendants to make use of various bank accounts and/or assets, but to restrain defendants from engaging in transfers outside those in the ordinary course of business.  *See Reilly v. City of Harrisburg*, 858 F.3d 173, 178-79 (3d Cir. 2017) ("District courts have the freedom to fashion preliminary equitable relief so long as they do so by 'exercising their sound discretion.'" (citation omitted)).  In the event that the Court determines a bond is required, Van Horn Metz requests that the Court order a modest bond requirement given the balance of the equities and Van Horn Metz's previous loss of more than $4.3 million.

This Court has discretion to waive the Rule 65(c) bond requirement if the hardship that Van Horn Metz would suffer as a result of the bond requirement overwhelmingly outweighs the harm that defendants may suffer as a result of the injunction's issuing.  *Elliott*, 98 F.3d at 60 ("Where the balance of these equities weighs overwhelmingly in favor of the party seeking the injunction, a district court has the discretion to waive the Rule 65(c) bond requirement."); *Temple Univ. v. White*, 941 F.2d 201, 219 (3d Cir. 1991) (collecting cases).  *See also Zambelli Fireworks Mfg. Co., Inc.*, 592 F.3d at 426 (stating that courts may waive bond requirement where no monetary harm results to defendant).  Courts in the Third Circuit may accordingly waive the bond requirement where the moving party is likely to succeed on the merits and the equities favor the plaintiff.  *See McCormack v. Twp. of Clinton*, 872 F. Supp. 1320, 1328 (D.N.J.

-21-

1994) (waiving bond requirement where plaintiff was likely to succeed on the merits and the equities favored the plaintiff).

IV.     **CONCLUSION**

As detailed in the foregoing, Van Horn Metz meets its burden of showing that a constructive trust should be imposed and a preliminary injunction should be entered in its favor and against defendants in accordance with the proposed form of order submitted herewith.

Respectfully submitted,

WHITE AND WILLIAMS LLP

BY:   /s/ Thomas B. Fiddler
       Thomas B. Fiddler
       Natalie B. Molz
       1650 Market Street
       One Liberty Place, Suite 1800
       Philadelphia, PA 19103-7395
       Phone: 215.864.7000

       Attorneys for Plaintiff
       Van Horn, Metz & Co., Inc.

Dated:  January 25, 2021

26458417v.3