**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| VAN HORN, METZ & CO., INC., | |
| Plaintiff, | Civil Action No. 21-01128 (FLW) |
| v. | |
| CHRISTINE CRISAFULLI, and JOHN & JANE DOES 1-10, | **OPINION** |
| Defendants. | |

**WOLFSON, Chief Judge:**

Plaintiff Van Horn, Metz & Co., Inc. ("Plaintiff" or "Van Horn Metz"), a specialty raw materials distributor, brought this diversity action against Defendant Christine Crisafulli ("Mrs. Crisafulli"), in connection with her late husband's, Anthony Crisafulli ("Anthony") (collectively with Mrs. Crisafulli, the "Crisafullis"), purported theft and misappropriation of Plaintiff's funds, totaling $4,353,554.  Presently before the Court is Plaintiff's Motion for Constructive Trust and Preliminary Injunction (ECF No. 2), as well as its Supplemental Motion for Preliminary Injunction (ECF No. 35), seeking to impose a constructive trust and preliminarily enjoin and restrain Mrs. Crisafulli from spending, transferring, or otherwise disposing of those funds which either exist in bank accounts or are held as assets.

For the reasons set forth below, Plaintiff's Motion for Constructive Trust and Preliminary Injunction and Supplemental Motion for Preliminary Injunction are **GRANTED**.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   Anthony Crisafulli's Relationship with Van Horn Metz

Van Horn Metz is a raw materials distributor headquartered in Conshohocken, Pennsylvania, that provides services to clients engaged in the manufacture of lubricants, inks, adhesives, and sealants.  (ECF No. 1, Verified Complaint ("Compl.") at ¶ 8.)

Beginning in 1995, Plaintiff employed Anthony Crisafulli.  (*Id.* at ¶ 10.)  While Anthony was initially hired as a bookkeeper, earning $34,000 per year, he was promoted to the position of Controller in 2005, earning $130,423.30 annually in salaried compensation.  (*Id.* at ¶¶ 10-11.)  Over time, Plaintiff alleges that Anthony also gradually gained more responsibility, including, among other things, signature authority over the company's bank accounts, authorization to conduct automated clearing house ("ACH") transfers, responsibility for the company's payroll, responsibility for paying vendors and other company expenses, managing the 401(k) retirement plan, oversight of the accounting department, communication with outside accountants, and responsibility for and access to all financial records and accounting software.  (*Id.* at ¶ 12.)  Further, Plaintiff alleges that it entrusted Anthony to classify and record company receipts and expenditures on the general ledger in a manner consistent with standard accounting principles, which would enable others at Van Horn Metz to understand the company's finances.  (*Id.* at ¶ 13.)

### B.   Anthony Crisafulli's Death and Van Horn Metz's Discovery of Stolen and Misappropriated Company Funds

On or about October 15, 2020, Anthony Crisafulli left his office at Van Horn Metz, taking with him his company-issued laptop computer, cell phone, bank key fob for international wires, checks for suppliers, stock loan documents, and various other company financial documents.  (*Id.* at ¶ 44.)  Shortly thereafter, Anthony contracted COVID-19 and was hospitalized on or about October 17, 2020.  (*Id.* at ¶ 45; Affidavit of Christine Crisafulli in Opposition to Plaintiff's Motion

2

for Preliminary Injunction ("Crisafulli Aff."), ¶ 15.)  Plaintiff alleges that while at the hospital, Anthony, with the assistance and participation of Mrs. Crisafulli, called a Van Horn Metz employee to encourage that employee to take the company payroll records home or otherwise conceal them from Van Horn Metz's president.  (*Id.* at ¶ 48.)  On October 30, 2020, Anthony died. (*Id.* at ¶ 52.)

Following his death, another Van Horn Metz employee assumed payroll responsibilities. (*Id.* at ¶ 54.) Subsequently, Plaintiff alleges that it discovered a substantial amount of missing company funds and an embezzlement scheme perpetrated by Anthony from 2012 to 2020.  (*Id.* at ¶ 55.)  Specifically, Plaintiff alleges that Anthony misappropriated in excess of $4.3 million of company funds by paying himself unauthorized salary increases, unauthorized bonuses, and unauthorized commissions. (*Id.* at ¶ 16.)  Additionally, Plaintiff claims that Anthony improperly used his company credit card for personal expenses, and transferred funds by ACH transactions directly to his personal Chase credit card to pay for unauthorized personal purchases.  (*Id.*) Plaintiff further claims that Anthony committed this theft by "maintaining complete control over the company's finances in his capacity as Controller and (1) providing Van Horn Metz's officers and outside accountants with false and misleading profit and loss statements and annual reports that did not reflect Van Horn Metz's true financial performance; (2) recording the embezzled funds in the general ledger under the inventory adjustment accounts/cost of goods sold columns such that his theft would not be apparent from the company financial statements; (3) limiting or restricting other Van Horn Metz accounting employees' access to the company accounting system; and (4) maintaining abnormal working hours in an effort to minimize the opportunity for other employees to observe his embezzlement." (Pl. Preliminary Injunction Moving Br., 3.)  To be clear,

there is no evidence proffered by Mrs. Crisafulli that disputes Anthony's misappropriation of money from Van Horn Metz.

### C.    The Crisafullis's Use of the Misappropriated Funds and Mrs. Crisafulli's Conduct Following Her Husband's Death

Plaintiff alleges, upon information and belief, that the Crisafullis used the misappropriated funds to purchase, *inter alia*, houses, lavish vacations, and a variety of other personal items.  (*Id.* at ¶¶ 26, 73.)  Specifically, Plaintiff claims that the Crisafullis purchased a vacant lot in located at 35 Bullard Drive, Lavallette, New Jersey 08735 ("Lavallette Property") for $995,000, where they custom-built a 3,600 square foot family home; took lavish vacations multiple times per year, including trips to Mexico, the British Virgin Islands, St. Barths and St. Maarten, and the Cayman Islands; and Anthony Crisafulli used some portion of the misappropriated Van Horn Metz funds to pay for his coin collection valued at more than $2,500,000.[1]  (*Id.* at ¶¶ 31, 34-35.)  Additionally, Plaintiff alleges that after her husband's death, Mrs. Crisafulli "paid $1,076,372 in stolen funds for the purchase of a second custom home located at 27010 Bay Bluff Road, Selbyville, Delaware." (*Id.* at ¶ 33.)

As to Mrs. Crisafulli, Plaintiff alleges that she aided and abetted her husband's breach of fiduciary duties by participating in his efforts to spend and dissipate money stolen from the

---

[1]    The Court acknowledges that the true value of the coin collection is disputed. Van Horn Meltz's Supply Chain Manager, Giorge Dalaperas, stated that Anthony told him that he bought a coin worth roughly $65,000 in January or February 2020, and that he informed Mr. Dalaperas that the entire collection was worth $2.5 million. (*See* Declaration of Giorge Dalaperas, dated January 21, 2021, ¶¶ 6-7.) In addition, Van Horn Metz's Accounts Payable Manager, Cathy Stevens, stated that Anthony told her that he was a coin collector and that he owned a coin valued at $35,000. (*See* Declaration of Cathy Stevens, dated January 21, 2021, ¶ 5.) In contrast, Mrs. Crisafulli declares that Anthony began collecting coins "more than 30 years ago," and that approximately ten years ago, he purchased an insurance policy for the collection which valued it at $250,000. Mrs. Crisafulli further states that in the last ten years, Anthony increased the insurance policy on the collection by only $50,000.  (Crisafulli Aff., ¶ 22.)

company.  According to Plaintiff, Mrs. Crisafulli knew or should have known that her husband had an annual salary of approximately $139,000 and that his "position as Controller at Van Horn Metz could never have provided their family with enough legitimate income to own the assets and lead the lifestyle being led by their family." (*Id.* at ¶ 28.)  Moreover, Plaintiff alleges, upon information and belief, that Mrs. Crisafulli has not worked in approximately fifteen years.  (*Id.* at ¶ 29.)  In addition to aiding and abetting, Plaintiff claims that Mrs. Crisafulli took additional steps after her husband's death to conceal his theft and the misappropriation of company funds.  To that end, Plaintiff alleges that Mrs. Crisafulli has refused to return her husband's company-issued laptop, claiming that she cannot locate it, and that she tampered with his business cell phone.  (*Id.* at ¶¶ 58-63.)  With respect to the cell phone, Plaintiff alleges that on November 23, 2020, Van Horn Metz's outside IT consultant spoke with Mrs. Crisafulli at which time he explained that any personal information on her husband's cell phone would be segregated, preserved, and returned to her.  (*Id.* at ¶ 60.)  Notwithstanding this conversation, however, Plaintiff alleges, upon information and belief, that Mrs. Crisafulli (or someone on her behalf) intentionally wiped the phone clean of any and all information and restored the device to factory settings.  (*Id.* at ¶ 61.)

### D.  Procedural History and Instant Motion for Constructive Trust and Injunctive Relief

On January 25, 2021, Plaintiff filed its Verified Complaint, asserting the following five claims against Mrs. Crisafulli: constructive trust and injunctive relief (Count I), unjust enrichment (Count II), conversion (Count III), fraudulent transfer (Count IV), and aiding and abetting breach of fiduciary duty (Count V).  (*See*, *e.g.*, Compl.)

Along with its Complaint, Plaintiff filed the instant Motion for Constructive Trust and Preliminary Injunction.  (ECF No. 2.)  Plaintiff's motion seeks to preliminarily enjoin and restrain Mrs. Crisafulli from spending or otherwise transferring the $4,353,554 million in funds her

husband allegedly embezzled from Van Horn Metz and/or from selling or otherwise disposing of any assets she owns or possesses which were paid for, in whole or in part, by the funds unlawfully obtained from Van Horn Metz.  With respect to its request for a constructive trust, Plaintiff seeks an Order placing a constructive trust on the following assets "owned or possessed by [Mrs. Crisafulli] to the extent necessary to preserve money and collateral in an amount equal to at least that which her husband [purportedly] stole from Van Horn Metz," estimated to be approximately $4,353,554:

1. Unspecified bank accounts;
2. Real property, including the home located at 35 Bullard Drive, Lavallette, New Jersey 08735;
3. The proceeds from the sale of the Crisafullis's home located at 27010 Bay Bluff Road, Selbyville, Delaware 19975;
4. Anthony's coin collection;
5. Anthony's sports memorabilia collection; and
6. Unidentified pieces of jewelry.

Finally, Plaintiff requests that the Court direct Mrs. Crisafulli to return all of Plaintiff's property in her possession or control, including the laptop possessed by her late husband.

In response to Plaintiff's emergent Motion, Mrs. Crisafulli asserted that the assets she and her late husband owned were purchased from legitimate sources of income, including family gifts, insurance proceeds, inheritances, and sales of numerous homes.  (ECF No. 12.)  Based on these factual disputes, Plaintiff moved for leave to take expedited discovery, which the Court granted. (ECF Nos. 14 and 16.)  During the course of the parties' expedited discovery, however, Plaintiff filed an Emergency Motion for a Temporary Restraining Order, seeking to restrain Mrs. Crisafulli from causing further irreparable harm to Van Horn Metz by transferring or otherwise dissipating the proceeds from the sale of the Delaware Property believed to be $1,512,896.69.  In support of that Motion, Plaintiff argued that Mrs. Crisafulli not only sold the property located at 27010 Bay Bluff Road, Selbyville, Delaware 19975 ("Delaware Property"), which is the subject of the instant

motion, but she also failed to disclose the agreement to sell the Delaware Property despite Van Horn Metz's outstanding discovery requests and multiple discovery conferences with the Magistrate Judge.   On September 2, 2021, based on Mrs. Crisafulli's "troubling" conduct, the Court granted Plaintiff's request for a temporary restraining order ("TRO"), finding that such "concealment of the sale of the Delaware Property raised the specter that she was attempting to dissipate assets."  (ECF No. 40.)

## II.   <u>LEGAL STANDARD</u>

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Figueroa v. Precision Surgical, Inc.*, 423 Fed. Appx. 205, 208 (3d Cir. 2011) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).  It is well-settled that a party seeking a preliminary injunction must establish the following: (1) a likelihood of success on the merits; (2) that [it] will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.  *Kos Pharms. Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).  All four factors must favor preliminary relief. *Lanin v. Tenafly*, 515 Fed. Appx. 114, 117 (3d Cir. 2013) (citing *Duraco Products, Inc. v. Joy Plastic Enterprises*, 40 F.3d 1431, 1438 (3d Cir. 1994).  "A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." *NutraSweet Co. v. Vit–Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999).

## III.   <u>DISCUSSION</u>

On this motion, Plaintiff argues that a preliminary injunction is necessary to preserve and prevent the further dissipation of over $4.3 million that were purportedly embezzled from Van Horn Metz by its recently deceased Controller, Anthony Crisafulli.  Plaintiff contends and that as

a result of Anthony's passing, these funds or property purchased with these funds are in the possession of his wife and the presumed executor/administrator of his estate, Mrs. Crisafulli, and are subject to dissipation; without an injunction, Plaintiff maintains that recovery of any future judgment might be impossible.  In that regard, Plaintiff proposes that a constructive trust should be placed on all assets, bank accounts, and real property owned or possessed by Mrs. Crisafulli that amount to the approximately $4.3 million allegedly stolen from Van Horn Metz.

### A.    Irreparable Harm

Plaintiff has shown that it is likely to suffer irreparable harm absent injunctive relief.  A plaintiff demonstrates irreparable harm and is entitled to injunctive relief when it is threatened with harm that "cannot be redressed by a legal or an equitable remedy following trial." *Nat'l Reprographics, Inc. v. Strom*, 621 F. Supp. 2d 204, 222 (D.N.J. 2009).  Here, Plaintiff has shown that it will suffer irreparable harm if Mrs. Crisafulli is not preliminarily enjoined from transferring the $4.3 million in funds allegedly embezzled by her late husband and/or from selling or otherwise disposing of the substantial tangible assets the Crisafullis purchased over the last eight years with the wrongfully obtained funds.  Indeed, as is the case here, "a party seeking an asset freeze [or preliminary injunctive relief] to preserve a money judgment may show irreparable injury by showing that the freeze is necessary to prevent the consumption, dissipation or fraudulent conveyance of the assets that the party pursuing the asset freeze seeks to recover in the underlying litigation." *Elliott v. Kiesewetter*, 98 F.3d 47, 54 (3d Cir. 1996); *see also Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 206 (3d Cir. 1990) ("The fact that the assets subject to the Freeze Order are primarily money assets does not preclude entry of a freeze order enjoining the use of those assets.").

8

In this case, irreparable harm is clear based on Mrs. Crisafulli's admitted dissipation of assets since her husband's death and Plaintiff's commencement of this action. Plaintiff has shown that in November 2020, less than one month after her husband's death, Mrs. Crisafulli purchased the Delaware Property for approximately $1,076,372. Plaintiff submits that Mrs. Crisafulli used the ill-gotten funds to purchase the property. Thereafter, despite commencement of this action and ongoing discovery obligations ordered by this Court, Mrs. Crisafulli sold that property for $1,512,896.69. Significantly, Mrs. Crisafulli proceeded with the sale without notice to Plaintiff or the Court, and she has admitted that while she retained a majority of the sale proceeds, she already directed approximately $500,000 from the sale of the Delaware Property to creditors. (ECF No. 42 at 2-3.) Moreover, Plaintiff alleges, upon information and belief, that Mrs. Crisafulli has also transferred jewelry and money to her children following the death of her husband. Despite filing multiple briefs and affidavits in opposition to Plaintiff's application for injunctive relief, neither Mrs. Crisafulli nor her counsel have opposed these allegations. Thus, given that Mrs. Crisafulli's pattern of behavior in the months following her husband's death suggests a likelihood that Mrs. Crisafulli will continue to dissipate the assets which are subject to a potential judgment in this case,[2] the Court finds that Plaintiff has demonstrated that it will be irreparably harmed absent the

---

[2]      The Court also finds concerning Mrs. Crisafulli's response to Plaintiff's assertion of concealment concerning Anthony's company-issued laptop and cell phone. First, Mrs. Crisafulli does not dispute Plaintiff's allegation that her husband's cell phone was restored to its factory settings while in her possession. In fact, Mrs. Crisafulli represents that following Anthony's death, she attempted to unlock her late husband's cell phone to access his photographs and other personal information; however, after entering several incorrect passcodes, the phone "locked her out" and erased all data. (Crisafulli Aff., ¶ 48.) Mrs. Crisafulli has provided no expert opinion, however, to confirm that the make and model cell phone provided to Anthony by Van Horn Metz would operate in this fashion. In addition, with respect to the company-issued laptop provided to Anthony, Mrs. Crisafulli confirms that Anthony had the laptop with him when hospitalized; however, she claims that "it was not returned to [her] when [she] went to pick up his belongings." (*Id.* at ¶ 49.) Because Mrs. Crisafulli does not dispute that the laptop was owned by Plaintiff and

granting of a preliminary injunction. *See Elliott*, 98 F.3d at 54 ("A district court is clearly permitted to consider the likelihood that a defendant will be able to pay a judgment in determining whether to enter an asset freeze order.").

### B. Likelihood of Success on the Merits

Next, a party moving for a preliminary injunction has the burden to prove its likelihood of success on the merits of the case. *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990)). "On this factor, a sufficient degree of success for a strong showing exists if there is a reasonable chance or probability, of winning" on Plaintiff's unjust enrichment, conversion, and aiding and abetting breach of fiduciary duty claims. *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*, 910 F.3d 106, 115 (3d Cir. 2018) (internal quotation marks and citation omitted). This is not to imply, however, that Plaintiff must meet its ultimate burden of "a more-likely-than-not showing of success." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 n.3 (3d Cir. 2017). Rather, Plaintiff need only establish "a reasonable probability, not the certainty, of success on the merits." *SK & F. Co. v. Premo Pharm. Labs., Inc.*, 625 F.2d 1055, 1066 (3d Cir. 1980).

### 1. Constructive Trust (Count I) and Unjust Enrichment (Count II)

A constructive trust is an equitable remedy and not an independent cause of action. *See Flanigan v. Munson*, 175 N.J. 597 (2003); *Bergen–Eastern Pension Trust v. Sorensen*, No. BER–L–7669–03, 2007 WL 283440, at *2 n. 3 (App. Div. Jan 11, 2007). Rather, courts in New Jersey have traditionally applied a two-part test when determining whether a constructive trust is an appropriate remedy. *D'Ippolito v. Castoro*, 51 N.J. 584, 589 (1968). There must be a showing of

---

given to Anthony for his use in connection with the company, the Court grants Plaintiff's request that Mrs. Crisafulli be directed to turn over the laptop should she possess it.

"(1) a wrongful act, which (2) resulted in an unjust enrichment." *Cap. Inv. Funding, LLC v. Lancaster Res., Inc.*, No. 8-4714, 2014 WL 5798121, at *2 (D.N.J. Nov. 6, 2014).  Thus, the essential elements for the imposition of a constructive trust are unjust enrichment and a finding that there was some wrongful act, usually, though not limited to "fraud, mistake, undue influence ... which has resulted in a transfer of property."  *Stewart v. Harris Structural Steel Co., Inc.*, 198 N.J. Super. 255, 265 (App. Div. 1984) (quoting *D'Ippolito, et al. v. Castoro, et al.*, 51 N.J. 584, 589 (1968).  Under New Jersey law, a claim for unjust enrichment requires a showing that: (1) the defendant received a benefit from the plaintiff; (2) that the retention of the benefit would be unjust; and (3) that the plaintiff expected remuneration from the defendants at the time it performed or conferred a benefit.  *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994); *In re K-Dur Antitrust Litigation*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004).

Here, Plaintiff has shown a reasonable probability of establishing all three elements required to succeed on its unjust enrichment claim, as well as a wrongful act committed by Anthony Crisafulli, *i.e.*, misappropriating more than $4.3 million belonging to Van Horn Metz. Indeed, the evidence produced during the parties' limited expedited discovery, as well as the forensic accounting reports provided by Plaintiff's expert, Stephen J. Scherf, CPA/CFF, CFE, demonstrate a connection between the money stolen from Van Horn Metz and the Crisafullis.

At the outset, Mr. Scherf's preliminary analysis of misappropriation report ("Preliminary Report"), dated January 21, 2021, outlines that Anthony embezzled money from Van Horn Metz in three ways: (1) excess compensation, (2) improper ACH transfers, and (3) unauthorized use of the company credit card.  (*See* Preliminary Report, attached to Compl. at Ex. D at 3.)  With respect to excess compensation (including improper base salary increases, commissions, and bonuses), the Preliminary Report opines that unbeknownst to the company, Anthony incrementally increased his

salary over and above that which he was legitimately entitled and unilaterally awarded himself bonuses and commissions.  (*Id.* at 3-4.)  Indeed, Plaintiff claims that at no point during Anthony's employment with the company was he entitled to receive commissions as part of his compensation.  (Compl., ¶ 20.)  According to Mr. Scherf, from 2012 to 2020, Anthony was entitled to be paid $1,038,599 in regular bonuses and compensation; however, Van Horn Metz unknowingly paid Anthony $2,058,495 – a difference of $1,019,936.  (Preliminary Report at 4.)  Next, Mr. Scherf explains that Anthony made "unauthorized ACH transfers from Van Horn Metz's PNC Bank account, ending in 2233" to a personal Chase credit card owned by Anthony Crisafulli.[3] (*Id.* at 4-5.)  Mr. Scherf's analysis shows that between 2013 and 2020, Anthony's unauthorized ACH transfers totaled approximately $3,333,618, including one year in which he transferred $680,044.[4] (*Id.* at 5.)  Finally, Anthony was provided a Bank of America business credit card to use for company purposes, including office supplies, groceries for the office, and other work-related items.  (*Id.* at 5.)  Mr. Scherf explains that while he has identified certain improper transactions involved with this credit card, he has not "quantified those losses at this time since our investigation is continuing."  (*Id.*)  In total, Mr. Scherf's preliminary investigation concludes that when combined, Anthony's estimated misappropriation amounts to approximately $4,353,554.[5]

---

[3]    The Court also notes that Anthony never provided Plaintiff with receipts or other supporting documentation for these Chase Credit Card ACH transfers/expenditures, despite both company and Internal Revenue Service guidelines requiring that such supporting documents be maintained in the ordinary course of business.  (Preliminary Report at 4-5.)  This further suggests that the ACH payments initiated by Anthony likely represent a misuse and misappropriation of company funds rather than authorized uses.

[4]    Mr. Sherf also notes that because Van Horn Metz identified these ACH transfers shortly after Anthony's death, they were able to reverse the August, September, and October 2020 transactions which amounted to approximately $145,000.  (Preliminary Report at 5.)  As a result, those ACH transfers were excluded from Mr. Sherf's forensic accounting analysis and not calculated in his final totals of misappropriated funds.

[5]    Although Mrs. Crisafulli argues that Anthony's income, including salary, bonus, and commissions, was reported on his W-2, which was provided by Van Horn Metz each year, and

(*Id.* at 6.) Accordingly, the forensic evidence uncovered to date suggests that Anthony committed the "wrongful act" required to satisfy the first element of a constructive trust.

Next, the documents produced during the parties' limited expedited discovery, including that the Crisafullis maintained joint banking accounts, and Mrs. Crisafulli's failure to sufficiently substantiate her claims of independent assets outside of the marriage, demonstrate that Mrs. Crisafulli received the benefit of the funds misappropriated from Van Horn Metz.  In her sworn affidavit, Mrs. Crisafulli stated that she and her late husband "always kept separate finances" and she "did not have permission to use my husband's funds for these types of items [i.e., personal items]. That was an issue in our marriage." (*See* Crisafulli Aff. at ¶¶ 24, 41.)  Simply put, Mrs. Crisafulli paints a picture that her finances were kept separate from her deceased husband, and that she never had access to his personal funds.  The evidence, however, suggests that her statements are patently untrue.  Rather, Mrs. Crisafulli and her late husband appear to have maintained multiple joint accounts, including two Wells Fargo Preferred Checking accounts and a joint bank account at OceanFirst Bank.  (*See* Wells Fargo Consumer Deposit Account Relationship Change Application, Account No. XXX1867 (WellsFargo_000008-11), attached as Ex. C to Certification of Thomas B. Fiddler, Esq., dated April 29, 2021 ("Fiddler Supp. Cert."); Wells Fargo Consumer Deposit Account Relationship Change Application, Account No. XXX3872 (WellsFargo_000012-15), attached as Ex. D to Fiddler Supp. Cert.; OceanFirst Bank Signature Card (OceanFirst_000007), attached as Ex. F to Fiddler Supp. Cert.)  Specifically, the Wells Fargo

---

therefore, Plaintiff should have been aware of these alleged salary increases, bonuses, and commissions, this alleged "awareness" does not excuse the wrongful nature of misappropriated funds.  In addition, I note that Anthony was employed as the Controller for Van Horn Metz, and in that position, Anthony might have been the person tasked to prepare and maintain W-2 forms for employees, including himself.  In any event, Mrs. Crisafulli's cursory argument in opposition to the instant application falls woefully short of asserting a defense to the allegations related to Anthony's misappropriation.

Account No. XXX3872 was a "Platinum Savings" account in which Mrs. Crisafulli and her late husband maintained over $400,000.   (*See* Account Statements for Account No. XXX3872 (WellsFargo_000023-61), attached as Ex. E to Fiddler Supp. Cert.)  Revealingly, according to the account statements, the funds in that account also appear to have been transferred from other accounts and deposits made in Conshohocken, Pennsylvania -- the location of Van Horn Metz's offices.  (*See*, *id.* at WellsFargo_000028.)  On November 10, 2020, eight days after Anthony's funeral, Mrs. Crisafulli closed this Wells Fargo account and withdrew $489,522.65.  (*Id.* at WellsFargo_000060.)  Similarly, evidence has revealed that on February 6, 2020, the OceanFirst Bank account had a balance of $31,187.63, and it was at least partially funded with deposits of $1,100 on February 7, 2020, February 14, 2020, and February 21, 2020.  The source of those deposits reads: "DEPOSIT-ACH, VAN HORN METZ & -PAYROLL."  (*See* OceanFirst Bank Account Summary at OceanFirst_000162, attached as Ex. G to Fiddler Supp. Cert.)  Notably, on February 27, 2020 and March 2, 2020, however, the OceanFirst Bank account was fully depleted by three checks of $34,130, $176.72, and $2.03.  (*Id.*)  Thus, as of March 5, 2020, the account had a negative balance of $7.00.  (*Id.*)

Mrs. Crisafulli argues that she and Anthony had other forms of income, including family inheritances, life insurance, and gifts, and therefore, the assets accumulated by the Crisafullis from 2012 to 2020 were not acquired using money stolen from Van Horn Metz.  None of those assertions, however, have been substantiated.  First, Mrs. Crisafulli has not demonstrated that she brought her own assets into the marriage.  Prior to her marriage in November 2005, Mrs. Crisafulli voluntarily filed for bankruptcy in 1999, *see In re Christine M. Albetta a/k/a Christine M. Mania*, United States Bankruptcy Court for the District of New Jersey, Case No. 99-58312, at which time she owned no real estate, had $175 in cash available, owned $375 in household goods and

furnishings, owned $550 in miscellaneous clothing, and owned a 1991 Nissan Sentra valued at $3,200.  (*See* Bankruptcy Documents attached as Ex. B to the Certification of Thomas B. Fiddler, Esq. in Further Support of Plaintiff's Motion for Preliminary Injunction, dated July 30, 2021 ("Fiddler Second Supp. Cert.").  She also indicated that at the time of the bankruptcy filing, she had more than $17,000 in total debt.  (*Id.*)  Moreover, while the Court recognizes that Mrs. Crisafulli's bankruptcy occurred in 1999, approximately six years before she married Anthony, and therefore, she had several years to improve her financial situation, Mrs. Crisafulli also produced certain TD Bank account statements dated November 23, 2005, two days prior to her marriage, which show a balance of $36.84.  (*See* Fiddler Second Supp. Cert. at Ex. C.)  Other TD Bank documents produced by Mrs. Crisafulli show that for the period just prior to her marriage, her highest monthly balance was $3,967.43 in January 2005; however, in February 2005, Mrs. Crisafulli's account was overdrawn by $1.14.  (*Id.* at Ex. D and E.)  Moreover, based on the record before the Court, Mrs. Crisafulli generated only minimal personal income during the couple's marriage.  Indeed, Van Horn Metz requested "[a]ll documents evidencing all sources of income for Christine Crisafulli from 2012 to the present from her employment with Jennifer Hartman Sica."[6]  In response, Mrs. Crisafulli produced W-2 forms from 2017 to 2020, indicating that her highest yearly income for that period was $8,216.25 in 2017, and from 2018 through 2020, she earned a total of only $9,660.00 combined.[7]  (*See* Fiddler Second Supp. Cert. at Ex G.)  Certainly, this income, alone, would not be sufficient to sustain the Crisafullis's lifestyle.

---

[6]  In her affidavit, Mrs. Crisafulli referenced Ms. Hartman Sica as her "employer."  (Crisafulli Aff. at ¶ 35.)

[7]  Mrs. Crisafulli did not produce evidence of any employment income prior to 2017. However, based on the Crisafullis's joint tax returns, Mrs. Crisafulli earned an estimated $7,969 in 2014, $5,678 in 2015, and $5,813 in 2016.

Second, no evidence exists that Anthony received a substantial inheritance from his father. In this regard, Mrs. Crisafulli stated in her affidavit that her late husband inherited an unspecified amount of money "when his father died in January 2014." (Crisafulli Aff., ¶ 7.)  However, Mrs. Crisafulli produced no documentary evidence to support this assertion.  Indeed, the only document she produced indicating a transfer of assets from Anthony's father to Anthony upon his death is a "Special Warranty Deed," dated January 13, 2016 -- two years after Anthony's father's death -- that shows a conveyance of property at the Sheraton Vistana in Orlando, Florida from "ANTONINO CRISAFULLI, AS SOLE SURVIVING TENANT," to "ANTONINO J CRISAFULLI AND CHRISTINE M CRISAFULLI, HUSBAND AND WIFE" in exchange for consideration of $10.00.  (*See* Special Warranty Deed, Fiddler Supp. Cert., Ex. L.)  The Court does not find the transfer of this timeshare property, alone, sufficient to rebut Plaintiff's *prima facie* showing that the Crisafullis likely acquired their substantial assets through illegitimate sources.[8]

Next, Mrs. Crisafulli claimed that she purchased a home located in Tannersville, Pennsylvania, in approximately April 2017, for an undisclosed amount using "proceeds received from the death of [her] ex-partner[, Kevin Kinnevy]," and monies she saved from her parents.[9] (Crisafulli Aff., ¶ 34.)  Specifically, Mrs. Crisafulli represented that "she received life insurance proceeds in excess of $400,000 upon the death of her former partner (the father of her eldest daughter) in or about 2014," and that those funds were used to purchase the Tannersville home. (*See* Def.'s Supplemental Opp. Br., ECF No. 24, at 4.)  However, Mrs. Crisafulli has failed to

---

[8]     Indeed, there is no argument, let alone evidence, from Mrs. Crisafulli that this timeshare property was ever sold by her husband such that this asset was liquidated to purchase other homes, vacations, collectibles, etc.

[9]     Plaintiff argues that the Tannersville, Pennsylvania home is particularly significant because Mrs. Crisafulli sold the home days after Anthony's death, on November 9, 2020, "for $425,000 and put those funds towards the Delaware house (which she subsequently purchased for over $1 million in cash)."

produce any evidence demonstrating that she purchased the Tannersville, Pennsylvania home with those funds other than her own representations. But, more importantly, the Court questions whether Mrs. Crisafulli actually received those funds from her ex-partner or parents in the first instance.

With respect to the life insurance proceeds, the documents produced by Mrs. Crisafulli appear to show that she, or her daughter, received $200,000, not the $400,000 that she claimed. (*See* Letter from Terry McDavid of Primerica Life Insurance Company, Fiddler Second Supp. Cert., Ex K.) And, further, Plaintiff has raised legitimate questions regarding the history and nature of the life insurance policy. In short, Kinnevy first applied for a $200,000 life insurance policy in 1996 after the birth of his first daughter, who he shared with a woman named Lisa Kinnevy. (*See* Primerica Life Insurance Company Application, Fiddler Second Supp. Cert., Ex. L.) Kinnevy listed the primary beneficiary to the policy as "Lisa M. Kinnevy in trust for [E.K]." (*Id.*) Two years later, following the birth of his second daughter, who he shared with Mrs. Crisafulli, Kinnevy submitted a Policy Change Application. (*See* Primerica Policy Change Application, Fiddler Second Supp. Cert., Ex. M.) On the application, Kinnevy listed two principal beneficiaries: Lisa M. Kinnevy, who he identified as "the mother of his daughter [E.K.]," and Christine Crisafulli, who he identified as the mother of his daughter [M.K.]" (*Id.*) Accordingly, as Plaintiff identified in its briefing, it is unclear to the Court whether upon the death of Kinnevy, Mrs. Crisafulli (who had been married to Anthony for nine years at the time of Kinnevy's death) received the proceeds from the life insurance policy without restriction, or whether she received them in trust for the former couple's minor child.[10]

---

[10]    Mrs. Crisafulli also represents that she was the beneficiary of Kinnevy's 401(k) plan and as result, she claims she received $330,000 upon his death in 2014; however, she provides no evidence to support this assertion.

Furthermore, as for Mrs. Crisafulli's claim that she also received money from her parents to purchase the home, she produced only three checks that she purportedly received from her father prior to Anthony Crisafulli's death: a $30,000 check dated November 21, 2019; a $30,000 check dated April 10, 2020; and a $30,000 check dated November 26, 2020. (*See* Checks, Fiddler Supp. Cert., Ex. P.) These three checks, however, post-date her purchase of the Tannersville home in April 2017, and therefore, while it appears true that her parents gifted her at least $90,000 at some point in time, those monies have not been shown to have been used to purchase the Tannersville, Pennsylvania home. Mrs. Crisafulli has not identified any other gifts from her parents. Thus, Mrs. Crisafulli has not substantiated her claim that she purchased the Tannersville, Pennsylvania property using only money she received from her parents or insurance proceeds, nor has she shown that the Crisafullis inherited any assets, much less substantial assets, from Anthony's father.

Accordingly, I find that Plaintiff has established a reasonable likelihood of success with respect to proving both elements of the two-prong constructive trust test. The "wrongful act" element is well-established based on the evidence in the record, particularly the findings of Mr. Scherf's expert forensic accounting reports and the documents produced by Mrs. Crisafulli, herself. Anthony appears likely to have misappropriated funds from Van Horn Metz through improper means and those misappropriated company funds were comingled with the Crisafullis's personal finances. As a result, Mrs. Crisafulli was undoubtedly "unjustly enriched" when she received and retained the stolen funds, at least some of which have been shown to have been deposited in an account that she jointly owned with Anthony. Accordingly, Van Horn Metz has established a reasonable likelihood that equity requires the imposition of a constructive trust.

18

2. *Conversion (Count III) and Aiding and Abetting Breach of Fiduciary Duty (Count IV)*

Because the Court finds that Plaintiff has established a reasonable probability of success on its claim for unjust enrichment, and therefore, a constructive trust should be imposed, I need not consider Plaintiff's likelihood of success on its remaining claims for conversion and aiding and abetting breach of fiduciary duty.

C.    **Remaining Injunction Factors**

Finally, I must identify the possible harm Mrs. Crisafulli would face should a constructive trust be imposed and she be preliminarily enjoined from transferring, selling, or otherwise dissipating $4,353,554 million in funds her husband allegedly embezzled from Van Horn Metz, and whether the public interest supports issuance of an injunction.  Here, Mrs. Crisafulli argues that should an injunction issue and a constructive trust be imposed, that she would have insufficient funds to provide for her daily needs. As discussed further, *infra*, however, Plaintiff provides no specifics regarding her day-to-day expenses, nor does she refute that she has access to at least $1.7 million in accounts that Plaintiff does not seek to place in the constructive trust.  Moreover, Mrs. Crisafulli has already admitted that she used some of the proceeds from the sale of the Delaware Property to pay creditors, and further dissipation of the funds would hinder the enforceability of any potential judgment.  *See Elliot*, 98 F.3d at 58-59.  Indeed, as noted above, the potential harm to Van Horn Metz is significant given the fact that $4.3 million is a substantial sum -- a sum that may exceed Mrs. Crisafulli's current assets should a future judgment be entered.  Thus, the balance of hardships favors an injunction.

Public interest is also clearly served by preserving a potential judgment against claims of unjust enrichment, conversion, and fraudulent transfer.  *See JRNA, Inc. v. Snow*, No. 7-01995, 2007 WL 2253493, at *5 (E.D. Pa. Aug. 3, 2007) (concluding that an injunction serves the public

interest by "discouraging the misappropriation of funds by business employees"); *see also Berger v. Weinstein,* No. 07-994, 2008 WL 191172, at *11 (E.D. Pa. Jan. 23, 2008) ("the prevention of unjust enrichment by means of fraud or misappropriation, even that affecting only private entities, is in the general public interest") (internal quotations omitted); *Wilmington Sav. Fund Soc'y v. Otieno-Ngoje,* No. 16-5631, 2016 WL 6821086, at *2 (D.N.J. Nov. 17, 2016) ("The public interest is served by preserving a potential judgment against a fraudulent conveyance claim.").

### D.     Scope of the Injunction and the Constructive Trust

Based upon the analysis above, the Court finds that an injunction and imposition of a constructive trust are necessary to preserve the status quo and, more importantly, preserve Plaintiff's ability to recover any potential future judgment.  However, the Court must determine the reasonable scope of the injunctive relief and quantify the assets to be included within the constructive trust.  Indeed, a blanket constructive trust cannot be imposed on all of Mrs. Crisafulli's assets, including those where the value is unknown or unidentified.  In that regard, Plaintiff simply requests that a constructive trust be placed on "all assets, bank accounts, and real property, including the homes located at 35 Bullard Drive, Lavallette, NJ 08735 and 27010 Bay Bluff Road, Selbyville, Delaware 19975, owned or possessed by defendant Christine Crisafulli to the extent necessary to preserve money and collateral in an amount equal to at least that which her husband stole from Van Horn Metz, currently estimated to be at least $4,353,554."

Here, Mrs. Crisafulli does not dispute that the Lavallette Property is an asset worth $504,837, and she acknowledges that she sold the Delaware Property for $1,650,568.04, but she has $1,150,000.00 set aside after paying certain creditors.  Further, although the parties dispute the value of Anthony's coin collection, Mrs. Crisafulli claims that it is valued at $300,000.  Thus, the Lavallette Property, the sale proceeds from the Delaware Property, and Anthony's coin collection

constitute identifiable sums certain.  The remaining assets, however, are not readily quantifiable based on the record before the Court.  For example, with respect to Anthony's sports memorabilia collection and Mrs. Crisafulli's jewelry, the value of these items is not addressed by either party, nor are the items reasonably identified.  Indeed, with respect to both items, Plaintiff does not identify any specific pieces of jewelry or specific pieces of memorabilia, let alone their value, and therefore, the Court declines to place the jewelry or Anthony's sports memorabilia collection in the constructive trust without more information.  Similarly, Plaintiff identifies only three bank accounts with commingled and quantifiable funds: (1) a Santander Bank checking account ending in 9899, which has a balance of $26; (2) a Wells Fargo checking account ending in 6465, which has a balance of $1,154; and (3) a Wells Fargo checking account ending in 1867, which has a balance of $20,426.  While Mr. Scherf's Sources and Uses Report, dated July 30, 2021, identifies a number of other investment accounts, and other potential bank accounts that purportedly contain commingled funds, the amount of money in those accounts appears unknown at this time. Without more proof, the Court can only place the three bank accounts with quantifiable funds in a constructive trust.  No doubt, based on this record, Mrs. Crisafulli has access to other accounts with funds that are not subject to this Court's preliminary injunction.

In determining the scope of the injunction, the Court is mindful of Mrs. Crisafulli's concern that if all her personal assets are frozen, she will "undergo a substantial hardship[,]" as she would be unable to provide for her children's daily needs, including food, medical insurance, and housing.  (Crisafulli Aff., ¶ 51.)  That said, Mrs. Crisafulli's argument is advanced only in general terms, providing no specifics as to her daily or monthly expenses for the necessities she claims she cannot afford should an injunction issue.

Rather, the record belies Mrs. Crisafulli's position.  In this connection, I note that the bank accounts placed under a constructive trust by the Court in this instance only total approximately $21,606, and Mrs. Crisafulli is also enjoined from selling or transferring Anthony's coin collection and the Lavallette Property.  As for the sale proceeds of the Delaware Property, which the Court acknowledges is significant, Mrs. Crisafulli has stated that she has already "set aside" $1,150,000.00 "in a separate investment account to protect herself in the event the Court ultimately Ordered restraints."  (*See* ECF No. 42-1 at 3.)  On the other hand, Mrs. Crisafulli has access to several other accounts containing substantial sums of money, such as Anthony's 401(k) valued at approximately $694,541 and an SEI Investment account which appears to, at least partially, contain proceeds from a life insurance policy on the life of Anthony in the amount of approximately $996,703.  Although neither party addresses the life insurance policy in their briefing, Mr. Scherf's Sources and Uses report appears to indicate that $825,000 was deposited into the Wells Fargo 6465 checking account on December 28, 2020, and while the deposit detail information was not available at the time of Mr. Scherf's report, it appears that deposit was the proceeds from the life insurance policy.  Shortly thereafter, it further appears that Mrs. Crisafulli transferred that money from the Wells Fargo 6465 checking account to the SEI Investment account, which as of March 21, 2021, had a balance of $996,703.  Accordingly, between Anthony's 401(k) and the SEI Investment accounts, alone, Mrs. Crisafulli has access to approximately $1.7 million.  Plaintiff does not seek a constructive trust on these accounts, as they were acquired following Anthony's death, and, more importantly, no evidence is provided from Mrs. Crisafulli to suggest that $1.7 million would be insufficient for her to provide the necessities for her family.[11]

---

[11]    The Court notes that should circumstances change such that Mrs. Crisafulli needs access to the accounts or assets placed in the constructive trust, she may petition the Court for interim relief.  However, she should be mindful that on such an application, she would be required to

IV.    **CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for Constructive Trust and Preliminary Injunction and Supplemental Motion for Preliminary Injunction are **GRANTED**.   Accordingly, Mrs. Crisafulli is enjoined from transferring, selling, or otherwise dissipating the following identifiable and quantifiable assets: (1) the Lavallette Property, (2) the proceeds from the sale of the Delaware Property, (3) the Santander 9899 bank account, with a balance of $26; (4) the Wells Fargo 6465 bank account with a balance of $1,154; (5) the Wells Fargo 1867 bank account, with a balance of $20,426; and (6) Anthony's coin collection, valued by Mrs. Crisafulli at approximately $300,000.  The accounts and assets amount to approximately $1,976,443, and they shall be placed in a constructive trust in accordance with the findings contained herein. To the extent that Plaintiff discovers additional bank accounts containing sums certain of commingled funds and it seeks to add those accounts to the constructive trust, it is directed to apply to the Court, in writing, with a certification providing proof of the funds and the basis for their inclusion in the constructive trust.

Finally, to the extent Mrs. Crisafulli still possesses or controls any Van Horn Metz company property, including the HP Elitebook X360 1040G laptop possessed by her late husband, Anthony J. Crisafulli, she is directed to return the property to Plaintiff.

Dated: September 23, 2021                                      /s/ Freda L. Wolfson
                                                              Freda L. Wolfson
                                                              U.S. Chief District Judge

---

demonstrate a basis for the additional funds, including a showing that the accounts unimpacted by the constructive trust are insufficient.